## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
## WESTERN DIVISION

JEFFREY WAYNE BROWN,
    Plaintiff,

    vs.

COMMISSIONER OF
SOCIAL SECURITY,
    Defendant.

Case No. 1:18-cv-370
Dlott, J.
Litkovitz, M.J.

**REPORT AND
RECOMMENDATION**

Plaintiff Jeffrey Wayne Brown brings this action pursuant to 42 U.S.C. § 405(g) for

judicial review of the final decision of the Commissioner of Social Security ("Commissioner")

denying his application for disability insurance benefits ("DIB"). This matter is before the Court

on plaintiff's statement of errors (Doc. 8), the Commissioner's response in opposition (Doc. 13),

and plaintiff's reply memorandum. (Doc. 14).

### I. Procedural Background

Plaintiff protectively filed his application for DIB on April 28, 2015, alleging disability

since May 25, 2011, due to herniated disc, degenerated disc and sciatic nerve. The application

was denied initially and upon reconsideration. Plaintiff, through counsel, requested and was

granted a *de novo* hearing before administrative law judge ("ALJ") Donald G. D'Amato.

Plaintiff and a vocational expert ("VE") appeared and testified at the ALJ hearing via video

conference on October 19, 2017. On December 15, 2017, ALJ D'Amato issued a decision

denying plaintiff's DIB application. Plaintiff's request for review by the Appeals Council was

denied, making the decision of ALJ D'Amato the final decision of the Commissioner.

### II. Analysis

#### A. Legal Framework for Disability Determinations

To qualify for disability benefits, a claimant must suffer from a medically determinable physical or mental impairment that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than 12 months. 42 U.S.C. § 423(d)(1)(A). The impairment must render the claimant unable to engage in the work previously performed or in any other substantial gainful employment that exists in the national economy. 42 U.S.C. § 423(d)(2).

Regulations promulgated by the Commissioner establish a five-step sequential evaluation process for disability determinations:

1) If the claimant is doing substantial gainful activity, the claimant is not disabled.

2) If the claimant does not have a severe medically determinable physical or mental impairment – *i.e.*, an impairment that significantly limits his or her physical or mental ability to do basic work activities – the claimant is not disabled.

3) If the claimant has a severe impairment(s) that meets or equals one of the listings in Appendix 1 to Subpart P of the regulations and meets the duration requirement, the claimant is disabled.

4) If the claimant's impairment does not prevent him or her from doing his or her past relevant work, the claimant is not disabled.

5) If the claimant can make an adjustment to other work, the claimant is not disabled. If the claimant cannot make an adjustment to other work, the claimant is disabled.

*Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 652 (6th Cir. 2009) (citing 20 C.F.R. §§ 404.1520(a)(4)(i)-(v), 404.1520(b)-(g)). The claimant has the burden of proof at the first four steps of the sequential evaluation process. *Id.*; *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 548 (6th Cir. 2004). Once the claimant establishes a prima facie case by showing an inability to perform the relevant previous employment, the burden shifts to the Commissioner to show that the claimant can perform other substantial gainful employment and that such employment exists

in the national economy. *Rabbers*, 582 F.3d at 652; *Harmon v. Apfel*, 168 F.3d 289, 291 (6th Cir. 1999).

## B. The Administrative Law Judge's Findings

The ALJ applied the sequential evaluation process and made the following findings of fact and conclusions of law:

1. The [plaintiff] meets the insured status requirements of the Social Security Act through December 31, 2017.

2. The [plaintiff] has not engaged in substantial gainful activity since May 25, 2011, the alleged onset date (20 CFR 404.1571, *et seq.*).

3. The [plaintiff] has the following severe impairments: degenerative disc disease of the lumbar spine, status post two fusion surgeries; lumbar radiculopathy; personality disorder; affective disorder; history of alcohol abuse/dependence; and obesity (20 CFR 404.1520(c)).

4. The [plaintiff] does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525 and 404.1526).

5. After careful consideration of the entire record, the [ALJ] finds that the [plaintiff] has the residual functional capacity [("RFC")] to perform work that is unskilled with one-, two-, or three-step instructions that is non-fast-rate production, defined as involving no conveyor belt or assembly line work; can occasionally function as a member of a discrete team and contact with coworkers and supervisors is largely superficial and occasional; can only occasionally be in directive interactive contact with the public; requires a "low stress" environment, defined as having only occasional changes in the work setting; lift and/or carry 5 pounds frequently and 10 pounds occasionally; stand and/or walk with normal breaks for 2 hours in an 8-hour workday, but can do so for only 15 minutes at one time; can sit with normal breaks for 6 hours in an 8-hour workday, but can do so for only 15 minutes at one time; can perform pushing and pulling motions with the upper extremities within the aforementioned weight restrictions for not more than 2/3 of an 8-hour workday but can only occasionally do so with the lower extremities; needs to avoid hazards in the workplace such as moving machinery and unprotected heights; job responsibilities do not include the use of hand held vibrating tools; needs a work environment with stable temperatures, stable humidity, and good ventilation; can occasionally balance, stoop, and crouch, but needs to avoid climbing, kneeling, and crawling; and requires work that, in addition to any regularly-scheduled breaks, allows him to be off task up to 10% per 8-hour workday

due to the symptoms of his impairments and/or the ancillary effects of treatment for such impairments.

6. The [plaintiff] is unable to perform any past relevant work (20 CFR 404.1565).[2]

7. The [plaintiff] was born [in] . . . 1969 and was 41 years old, which is defined as a younger individual age 18-44, on the alleged disability onset date. The [plaintiff] subsequently changed age category to a younger individual age 45-49 (20 CFR 404.1563).

8. The [plaintiff] has at least a high school education and is able to communicate in English (20 CFR 404.1564).

9. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the [plaintiff] is "not disabled," whether or not the [plaintiff] has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

10. Considering the [plaintiff]'s age, education, work experience, and residual functional capacity, there were jobs that existed in significant numbers in the national economy that the [plaintiff] can perform (20 CFR 404.1569 and 404.1569(a)).[3]

11. The [plaintiff] has not been under a disability, as defined in the Social Security Act, from May 25, 2011, through the date of this decision (20 CFR 404.1520(g)).

(Tr. 17-27).

## C. Judicial Standard of Review

Judicial review of the Commissioner's determination is limited in scope by 42 U.S.C. § 405(g) and involves a twofold inquiry: (1) whether the findings of the ALJ are supported by substantial evidence, and (2) whether the ALJ applied the correct legal standards. *See Blakley v.*

---

[2] Plaintiff has past relevant work as a delivery driver, a medium, semi-skilled job; and a file clerk, a light, semi-skilled job. (Tr. 25, 45).

[3] The ALJ relied on the VE's testimony to find that plaintiff would be able to perform the requirements of representative sedentary, unskilled jobs such as hand packager, with 52,000 jobs in the national economy; general office clerk, with 70,000 jobs in the national economy; and bench assembler, with 22,000 jobs in the national economy. (Tr. 26, 46).

*Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009); *see also Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 745-46 (6th Cir. 2007).

The Commissioner's findings must stand if they are supported by "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (citing *Consolidated Edison Co. v. N.L.R.B.*, 305 U.S. 197, 229 (1938)). Substantial evidence consists of "more than a scintilla of evidence but less than a preponderance. . . ." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007). In deciding whether the Commissioner's findings are supported by substantial evidence, the Court considers the record as a whole. *Hephner v. Mathews*, 574 F.2d 359 (6th Cir. 1978).

The Court must also determine whether the ALJ applied the correct legal standards in the disability determination. Even if substantial evidence supports the ALJ's conclusion that the plaintiff is not disabled, "a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right." *Rabbers*, 582 F.3d at 651 (quoting *Bowen*, 478 F.3d at 746). *See also Wilson*, 378 F.3d at 545–46 (reversal required even though ALJ's decision was otherwise supported by substantial evidence where ALJ failed to give good reasons for not giving weight to treating physician's opinion, thereby violating the agency's own regulations).

### D. Medical Evidence and Opinions

#### 1. *Treatment*

Plaintiff has worked as a truck driver for over 20 years. He suffered an industrial injury in December 2010 when he climbed out of his truck, missed a step, and fell on his left leg. (Tr. 259). Thomas Carothers, M.D., an orthopedic specialist, began treating plaintiff in February 2011. (Tr. 527-28). Plaintiff attended physical therapy and received two epidural injections in

5

October and November 2011, which ultimately did not relieve his pain. (Tr. 367, 533, 535-36, 544). Dr. Carothers' diagnoses included herniated lumbar disc and left lumbar radiculopathy. (Tr. 553). In August 2012, Dr. Carothers prepared a narrative indicating that plaintiff had not reached maximum medical improvement and that he was totally temporarily disabled until such time as surgery could be performed. (Tr. 330).

Robert Lewis, ATC, performed a functional capacity evaluation in June 2011, in which he concluded that plaintiff demonstrated functional tolerances at that time consistent with sedentary physical demands. (Tr. 304-08).

Plaintiff underwent an EMG study in August 2011 that verified "an impressive, predominantly left-sided acute lumbar radiculopathy." (Tr. 300-01).

Rehabilitation Specialist Judith Wachendorf, M.D., who appears to have treated plaintiff in connection with his Bureau of Worker's Compensation ("BWC") claim, prepared a Physician's Report of Work Ability in July 2012. She concluded that plaintiff could only work two hours a day or less, and he is uncomfortable in any position—sitting, standing or walking. (Tr. 309).

Due to the results of an August 2012 MRI, which revealed disc protrusions at L3-4 and L4-5 (Tr. 313-14), plaintiff consulted with neurosurgeon Jonathon A. Borden, M.D. (Tr. 353-56). On September 14, 2012, Dr. Borden found decreased sensation on the left calf area and a very positive straight leg raising on the left side with normal motor power and equal deep tendon reflexes. Dr. Borden recommended a lumbar interbody fusion surgery, but BWC only approved a discectomy. Dr. Borden performed a left L4-5 microlaminectomy and a discectomy lumbar fusion surgery in January 2013. (Tr. 362-63).

Plaintiff saw physical medicine and rehabilitation specialist, Janalee Rissover, M.D., in March 2013, when he initially reported good improvement in his symptoms following his surgery. However, he stated that his pain was gradually coming back and that he was having difficulty lifting more than 10 pounds. (Tr. 367). Dr. Rissover found plaintiff was "moving very poorly" and his prognosis to return to work was "poor." (Tr. 370). In April 2013, physical therapist Patrick Murphy noted that plaintiff had difficulty participating in post-operative physical therapy and was not progressing toward functional goals. He was not always compliant with his home exercise program. (Tr. 374). Plaintiff underwent an updated MRI of his lumbosacral spine in May 2013, which showed post-surgical changes as well as diffuse disc bulging and protrusion at L4-L5 that appeared to impress the left L5 nerve root. There was also a central herniation at L3-L4. (Tr. 378). In November 2014, a CT/discogram showed severe post-laminectomy syndrome. (Tr. 387).

Plaintiff underwent decompressive foraminotomy surgery in May 2015. (Tr. 390). During post-surgical follow-up appointments in 2015, plaintiff noted some improvements in his pain. (Tr. 471-72, 650-55).

In the spring of 2016, plaintiff participated in a 7-week work conditioning program. Plaintiff demonstrated a good level of effort and compliance throughout. Sarah Cline, PT, wrote in a report to Dr. Rissover that plaintiff's progress was "mild due to residual complications with low back pain and left lower extremity weakness," but plaintiff had improved functional mobility and tolerance with activities of daily living. (Tr. 661-62).

In June 2017, plaintiff underwent an MRI of the lumbar spine to evaluate his complaints of a 6-month history of progressive low back pain. The MRI revealed disc desiccation and

7

protrusion with abutment of the L5 nerve roots bilaterally at L4-L5 as well as disc desiccation and protrusion with mild central canal stenosis and effacement of the S1 nerve roots at L5-S1. (Tr. 522-23).

2. *Independent Medical Evaluations*

Gregory Fisher, M.D., examined plaintiff on behalf of the Ohio BWC in July 2013. (Tr. 605-10). Dr. Fisher concluded that plaintiff could "perform at most light duty activities of lifting, carrying ten pounds frequently, up to twenty pounds occasionally and avoid repetitive bending and twisting at the waist level." (Tr. 607-08).

V.P. Mannava, M.D., examined plaintiff on behalf of the Ohio BWC in August 2014. (Tr. 633-38). Plaintiff reported he had significant ongoing constant pain in the low back mostly on the left side going down to the leg. He can "hardly" stand up or walk, and he cannot drive a long distance. Dr. Mannava concluded that plaintiff had not yet reached maximum medical improvement as he was awaiting surgery at the time. (Tr. 636). Plaintiff was unable to return to his past work and "[a]t present time due to his significant symptoms and restrictions he can barely take care of himself." (Tr. 637). On the Report of Work Ability, Dr. Mannava assessed that plaintiff could occasionally lift up to ten pounds but never lift greater weights; could never bend, twist/turn, reach below the knee, push/pull; and could only occasionally stand/walk, sit, and lift above shoulders. Dr. Mannava concluded that plaintiff's restrictions were temporary. (Tr. 638).

3. *State Agency Review*

William Bolz, M.D., and Leanne Bertani, M.D., reviewed plaintiff's medical record in July 2015 and November 2015 respectively and concluded that plaintiff was capable of performing light exertional work with restrictions. He could occasionally climb ramps/stairs,

8

stoop, and crawl, and he could never climb ladders/ropes/scaffolds. (Tr. 58-60, 74-77). Dr. Bertani further opined at the reconsideration level that plaintiff was capable of frequently balancing, kneeling, and crouching, and he should avoid concentrated exposure to vibration and unprotected heights. (Tr. 75).

### E.    Specific Errors

On appeal, plaintiff argues that: (1) the ALJ improperly weighed the medical opinions of record; (2) the ALJ should have found a closed period of disability from August 16, 2011 through April 8, 2016; (3) the ALJ erred in evaluating his subjective complaints; (4) the ALJ erred by not incorporating the VE's testimony regarding plaintiff missing two days of work per month into the RFC; (5) the prior application filed in September 2012 should be reopened. (Docs. 8, 14).

### 1.  Whether the ALJ properly weighed the medical opinion evidence

Plaintiff argues that the ALJ erred in weighing the opinions of his treating specialists, Drs. Carothers and Borden, and erred in failing to find that their opinions covered a disability period over 12 consecutive months. (Doc. 8 at 7). Plaintiff also argues that the ALJ erred in failing to provide "good reasons" for discounting their opinions. (*Id.*). Plaintiff also argues that the ALJ erred in giving "some weight" to the one-time worker's compensation evaluation by Dr. Fisher, who evaluated plaintiff after his July 2013 back surgery, and in giving "partial weight" to the August 2014 evaluation of Dr. Mannava. (*Id.*). Plaintiff contends that the ALJ's opinion does not indicate which medical source opinion he afforded the most weight. (*Id.*). Plaintiff argues that Drs. Carothers, Borden, Mannava, and Fisher did not opine that plaintiff could sustain work for 40 hours a week for a period of 12 consecutive months from August 2011 through April 2016. (*Id.*).

9

In evaluating the medical opinion evidence, the ALJ considered the June 2011 functional capacity evaluation by Mr. Lewis, physical therapist; the forms completed by Drs. Carothers and Borden, and the other medical sources in July 2011 through December 2015; Dr. Fisher's 2013 independent medical examination; Dr. Mannava's August 2014 independent medical examination; and the opinions of the state agency medical consultants. (Tr. 24-25). The ALJ gave the opinion of Mr. Lewis "great weight" because it was based on a thorough testing of plaintiff's work-related functional tolerances. (Tr. 24). The ALJ gave "partial weight" to the opinions of Drs. Carothers and Borden and others, who indicated that plaintiff was either totally disabled from work or not able to return to his past work or any other light duty, alternative work, modified work, or transitional work. (*Id.*). The ALJ noted that their opinions indicating that plaintiff was not able to return to his past work as a delivery driver were supported by the objective evidence; however, their opinions that plaintiff was disabled from all work activity were not convincing. (*Id.*). The ALJ noted that comprehensive examinations showed that plaintiff had the functional capacity to perform a range of sedentary work, and plaintiff resumed working part-time for over a year in a position consistent with light work. (*Id.*).

The ALJ gave the opinion of Dr. Fisher "some weight," and noted that greater restrictions—i.e., plaintiff could lift no more than 10 pounds occasionally—were warranted. (*Id.*). The ALJ gave Dr. Mannava's opinion that plaintiff was unable to return to past work and "could barely take care of himself" "little weight." The ALJ explained that Dr. Mannava reported that plaintiff had not yet reached maximum medical improvement, he was awaiting surgery, and his restrictions were temporary. (Tr. 24-25). The ALJ also concluded that Dr. Mannava's opinion was "based on the [plaintiff]'s temporary decompensated status while a

second surgery was pending and therefore [was] not fairly reflective of the [plaintiff]'s abilities throughout the longitudinal period of disability." (Tr. 25).

Plaintiff has not shown how the ALJ erred in weighing the medical opinions of record. Plaintiff cites the treating physician rule in a perfunctory manner in his statement of errors without addressing the specific reasons the ALJ gave for granting only partial weight to Drs. Carothers and Borden's opinions of "total disability." (Doc. 8 at 7). The Court finds the ALJ complied with this rule and the applicable regulations in weighing the opinions of Drs. Carothers and Borden.

It is well-established that the findings and opinions of treating physicians are entitled to substantial weight. "In general, the opinions of treating physicians are accorded greater weight than those of physicians who examine claimants only once." *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 529-30 (6th Cir. 1997). *See also Harris v. Heckler*, 756 F.2d 431, 435 (6th Cir. 1985) ("The medical opinions and diagnoses of treating physicians are generally accorded substantial deference, and if the opinions are uncontradicted, complete deference."). "Treating-source opinions must be given 'controlling weight' if two conditions are met: (1) the opinion 'is well-supported by medically acceptable clinical and laboratory diagnostic techniques'; and (2) the opinion 'is not inconsistent with the other substantial evidence in [the] case record.'" *Gayheart v. Comm'r of Soc. Sec.*, 710 F.3d 365, 376 (6th Cir. 2013) (citing 20 C.F.R. § 404.1527(c)(2)). *See also Cole v. Astrue*, 661 F.3d 931, 937 (6th Cir. 2011). If the ALJ declines to give a treating source's opinion controlling weight, the ALJ must balance the factors set forth in 20 C.F.R. § 404.1527(c)(2)-(6) in determining what weight to give the opinion. *See Gayheart*, 710 F.3d at 376; *Wilson*, 378 F.3d at 544. These factors include the length, nature and extent of the treatment relationship and the frequency of examination. 20 C.F.R. §

11

404.1527(c)(2)(i)-(ii); *Wilson*, 378 F.3d at 544. In addition, the ALJ must consider the medical specialty of the source, how well-supported by evidence the opinion is, how consistent the opinion is with the record as a whole, and other factors which tend to support or contradict the opinion. 20 C.F.R. § 404.1527(c)(3)-(6); *Gayheart*, 710 F.3d at 376; *Wilson*, 378 F.3d at 544.

"Importantly, the Commissioner imposes on its decision makers a clear duty to 'always give good reasons in [the] notice of determination or decision for the weight [given a] treating source's opinion.'" *Cole*, 661 F.3d at 937 (citation omitted). *See also Wilson*, 378 F.3d at 544 (ALJ must give "good reasons" for the ultimate weight afforded the treating physician opinion). Those reasons must be "supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." *Cole*, 661 F.3d at 937. This procedural requirement "ensures that the ALJ applies the treating physician rule and permits meaningful review of the ALJ's application of the rule." *Gayheart*, 710 F.3d at 376 (quoting *Wilson*, 378 F.3d at 544).

The ALJ reviewed Dr. Carothers' August 2012 opinion that plaintiff was "temporarily totally disabled" until surgery is performed (Tr. 330) and Dr. Borden's October 2015 opinion that plaintiff "remains significantly disabled" (Tr. 652) and gave those opinions partial but not significant weight. (Tr. 24). The ALJ reasonably determined that their opinions were not consistent with other substantial evidence in the record indicating that plaintiff retained the ability to perform a range of sedentary work during this time period for a period of more than 12 consecutive months. In conducting a review of the record, the ALJ noted that Dr. Carothers' opinion was inconsistent with the June 2011 functional capacity evaluation performed by Mr. Lewis six months after plaintiff's back injury, which recommended that plaintiff not perform any

position that was not sedentary. (Tr. 22) (citing Tr. 304-08). After plaintiff's first back surgery in January 2013, an independent medical examination conducted by Dr. Fisher six months later showed plaintiff had functional limitations in the low back area, but still would be able to perform at most light duty activities of lifting, carrying 10 pounds frequently, up to 20 pounds occasionally and avoid repetitive bending and twisting at the waist level. (Tr. 22) (citing Tr. 605-08). The ALJ also noted that in October 2015, plaintiff reported to Dr. Borden that he was "generally doing ok" and his radicular pain was resolved and he had been picking up activities. (Tr. 22) (citing Tr. 650). In considering all of this conflicting evidence, the ALJ reasonably afforded the opinions of Drs. Carothers and Borden "partial but not significant weight." (Tr. 24).

While the ALJ's decision does not reflect an extensive analysis of the regulatory factors set forth in 20 C.F.R. § 404.1527(c)(2)-(6), the regulations require only that an ALJ decision include "'good reasons . . . for the weight give[n] [to the] treating source's opinion'—not an exhaustive factor-by-factor analysis." *Francis v. Comm'r Soc. Sec. Admin.*, 414 F. App'x 802, 804 (6th Cir. 2011) (citing *Wilson*, 378 F.3d at 547). *See also Guinn v. Comm'r of Soc. Sec.*, 555 F. Supp.2d 913, 920 (S.D. Ohio 2008) (ALJ's failure to mention regulatory factors may qualify as harmless error if the ALJ provided "specific reasons for the weight given to the treating source's medical opinion, supported by the evidence in the case record, and [was] sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight.") (quoting *Wilson*, 378 F.3d at 544). Here, the ALJ's decision reflects that he considered the treatment relationship of both Drs. Carothers and Borden and recognized their specialties in orthopedics and neurosurgery respectively. (Tr. 21). Moreover, the ALJ was not bound by their opinions that plaintiff was "totally disabled" from work. Whether a person is disabled within the meaning of the Social

Security Act is an issue reserved to the Commissioner, and a treating physician's opinion that his patient is disabled is not "giv[en] any special significance." 20 C.F.R. § 404.1527(e). Here, the ALJ reasonably considered that the evidence did not support a finding that plaintiff was precluded from performing a range of sedentary work. Other than arguing in a conclusory manner that the opinions of Drs. Carothers and Borden support a finding that plaintiff could not work for 12 consecutive months, plaintiff has not cited to any evidence in the record inconsistent with a finding that he could not perform sedentary work.

In addition, plaintiff has not shown how the ALJ erred in weighing the opinions of the independent examining physicians and state agency reviewing physicians. Without citing evidence in support, plaintiff argues that the opinions of Drs. Mannava and Fisher[4] support a finding that he was precluded from working 40 hours a week from the period August 2011 through April 2016. (Doc. 8 at 7). In light of the record demonstrating that plaintiff could perform a range of sedentary work, as described above, the ALJ reasonably concluded that Dr. Fisher's conclusion that plaintiff could perform light duty activities and occasionally lift 20 pounds was not fully supported by the record as a whole. (Tr. 24). The ALJ also reasonably concluded that Dr. Mannava's opinion that plaintiff was "unable to return to work" and could "barely care of himself" was inconsistent with the record demonstrating plaintiff could perform sedentary work, and Dr. Mannava's own opinion that plaintiff's restrictions were "temporary." (Tr. 25) (citing Tr. 637). In weighing the opinions of the state agency reviewing physicians, the ALJ noted that the evidence supported greater limitations than the range of light work

---

[4] Plaintiff mentions both Drs. Fisher and Wachendorf in his analysis. (Doc. 8 at 7). However, he only explains that the ALJ erred in giving "some weight" to Dr. Fisher and does not mention any error in regard to Dr. Wachendorf. Therefore, the Court will only consider plaintiff's argument with regard to Dr. Fisher.

recommended by those physicians. (Tr. 25). Overall, the ALJ found that "the reports of the

functional capacity evaluation in June 2011, the earlier independent medical examination in July

2013, and the [plaintiff]'s actual work activity since August 2016 following the work

conditioning program in April 2016 and the trial work period in July 2016 to be more reliable in

determining the [plaintiff]'s functional capabilities over time." (*Id.*). Plaintiff has not shown

how the ALJ erred in weighing the medical source opinions or how the medical source opinions

support a finding that he could not perform a range of sedentary work for a period of 12

consecutive months at any time between August 2011 and April 2016. Plaintiff's first

assignment of error should be overruled.

2. **Whether the ALJ erred in not finding a closed period of disability from August 16, 2011 through April 8, 2016.**

Plaintiff argues that the ALJ erred in not finding a "closed period of disability" from

August 16, 2011 until April 8, 2016. (Doc. 8 at 3-6). Plaintiff argues that his low back and leg

impairments lasted well over the 12 consecutive months to prevent him from sustaining any

work for 40 hours a week. (*Id.* at 3). Disability benefits may be awarded for a closed period.

*Myers v. Richardson*, 471 F.2d 1265, 1267 (6th Cir.1972). A claimant no longer qualifying as

disabled may be entitled to benefits if she previously suffered a disability for a continuing,

twelve-month period. *See Kennedy v. Comm'r of Soc. Sec.*, 87 F. App'x 464, 466 (6th Cir.

2003); *Smith v. Sec'y of Health & Human Servs.*, 893 F.2d 106, 110 (6th Cir. 1989). In a "closed

period" case, the ALJ determines that a new applicant for disability benefits was disabled for a

finite period of time that started and stopped prior to the date of the ALJ's decision. *Brown v.

Comm'r of Soc. Sec.*, No. 1:13-cv-851, 2015 WL 502143, at *5 (S.D. Ohio Feb. 5, 2015) (Report

and Recommendation), *adopted*, No. 1:13-cv-851 (S.D. Ohio Mar. 9, 2015) (citations omitted).

In support, plaintiff cites to isolated findings in the record but does not connect these isolated findings with any evidence of specific limitations precluding plaintiff from performing a range of sedentary work. For example, plaintiff cites the following findings: in May 2012, Dr. Carothers reported that plaintiff had markedly positive straight leg raising on the right and recommended a lumbar discectomy; in July 2012 Dr. Wachendorf from the BWC concluded that plaintiff could only work two hours a day; in August 2012 an MRI showed disc protrusions at L3-3 and L4-5; in an October 2012 exam, plaintiff had tenderness, spasms, restricted range of motion, positive straight leg raising, and absent left ankle reflex; and he had similar abnormalities in September and November 2012. (Doc. 8 at 4-5) (citing Tr. 331, 309, 313-14, 318-20, 355). As a result of these findings, plaintiff had low back surgery on January 16, 2013. (Tr. 362). Plaintiff also cites to post-2013 surgical findings in the record indicating that his condition only improved slightly after surgery, and he was eventually required to have surgery again in May 2015. (Doc. 8 at 5). The ALJ discussed many of these objective findings, including plaintiff's pain and unimproved symptoms two months after the January 2013 surgery. (Tr. 21). However, the ALJ reasonably found that these objective findings did not foreclose sedentary work. In addition, as discussed above, the ALJ reasonably weighed the medical source opinions and discussed how these opinions did not support a finding that plaintiff was precluded from performing sedentary work from August 16, 2011 until April 8, 2016. Plaintiff's second assignment of error should be overruled.

### 3. Whether the ALJ properly evaluated plaintiff's subjective complaints.

Plaintiff next argues that the ALJ erred in discounting his subjective complaints of back pain. (Doc. 8 at 8). Plaintiff argues that the objective evidence demonstrating abnormalities prior to his two back surgeries, including exam results and EMG and MRI studies support his

16

complaints. (*Id.*). Plaintiff states that his treatment history and daily activities from 2011 and 2016 support his subjective complaints of back pain. (*Id.*).

The regulations and SSR 16-3p describe a two-part process for evaluating an individual's statements about symptoms, including pain. First, the ALJ must determine whether a claimant has a medically determinable physical or mental impairment that can reasonably be expected to produce the symptoms alleged; second, the ALJ must evaluate the intensity, persistence, and functional limitations of those symptoms by considering objective medical and other evidence, including: (1) daily activities; (2) the location, duration, frequency, and intensity of pain or other symptoms; (3) precipitating and aggravating factors; (4) the type, dosage, effectiveness, and side effects of any medication taken to alleviate pain or other symptoms; (5) treatment, other than medication, received for relief of pain or other symptoms; (6) any measures used to relieve pain or other symptoms; and (7) other factors concerning functional limitations and restrictions due to pain or other symptoms. 20 C.F.R. § 404.1529(c); SSR 16-3p, 2017 WL 5180304, *3-8. The ALJ's assessment of a claimant's subjective complaints and limitations must be supported by substantial evidence and based on a consideration of the entire record. *Rogers*, 486 F.3d at 247 (internal quotation omitted). An ALJ's explanation of this decision "must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight." *Id.* at 248.

The ALJ conducted a thorough review of the record and evaluated plaintiff's subjective complaints in accordance with 20 C.F.R. § 404.1529(c) and SSR 16-3p. The ALJ found that while plaintiff's medically determinable impairments could reasonably be expected to cause the alleged symptoms, plaintiff's statements "concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other

evidence in the record for the reasons explained in this decision." (Tr. 21). In making this determination, the ALJ cited the lack of supporting objective medical evidence making plaintiff disabled for a period of 12 consecutive months from August 2011 through April 2016 and the medical opinion evidence. (Tr. 22-24).

The ALJ acknowledged that plaintiff's subjective reports of back pain radiating to the left lower extremity were reasonably supported by the objective evidence and strongly supported a conclusion that plaintiff was not capable of returning to his previous work as a delivery driver requiring medium exertional demand. (Tr. 22). Nevertheless, substantial evidence supports the ALJ's determination that the longitudinal medical evidence and medical opinions do not support the severity of plaintiff's physical impairments such that he is precluded from performing sedentary work during 2011-2016 after his back injury. As stated above, the ALJ adequately considered the evidence demonstrating that plaintiff could tolerate sedentary work activity with certain functional limitations, including Mr. Lewis's functional capacity evaluation conducted six months after plaintiff's back injury, Dr. Fisher's July 2013 independent medical examination, plaintiff's report in October 2015 that he was generally doing okay after a second back surgery, and plaintiff's ability to resume work in August 2016 following a work conditioning program and trial work period. (Tr. 25). The ALJ also considered that plaintiff was authorized to return to sedentary work on numerous occasions during the alleged period of disability. (Tr. 22).

Plaintiff argues that the ALJ failed to consider his daily activities and treatment, including his testimony that he frequently had to lay down before his second back surgery in 2015, and his conservative medical care, including medications, physical therapy, chiropractic treatment, and a work hardening program, did not provide relief of his pain. (Doc. 8 at 8). However, the ALJ did consider these factors but nevertheless concluded that they were

18

inconsistent with a finding that plaintiff could not perform sedentary work. (Tr. 20—after plaintiff gets off work, he goes straight home and lies down for a couple hours; Tr. 22—"the evidence shows that the plaintiff has consistently participated in specialized treatment and even undergone two back surgeries.").

Overall, the ALJ reasonably determined that plaintiff's allegations of disabling back pain precluding sedentary work was not supported by the record as a whole, including the objective medical evidence and the medical opinions. Where, as here, the ALJ's assessment of plaintiff's subjective allegations of his limitations is supported by substantial evidence, the Court affords great weight and deference to the ALJ's finding. *Walters*, 127 F.3d at 531. Accordingly, plaintiff's third assignment of error should be overruled.

### 4. Whether the ALJ erred in considering the VE's testimony regarding plaintiff missing two days of work a month.

Plaintiff argues that the ALJ failed to consider the VE's testimony that plaintiff would be precluded from performing work if he missed more than two days per month. (Doc. 8 at 9). The VE testified that an individual with the same functional physical limitations that the ALJ assessed in the RFC determination would be precluded from performing work if he were to miss greater than two workdays per month due to the symptoms from his physical impairments. (Tr. 74). "A vocational expert's testimony concerning the availability of suitable work may constitute substantial evidence where the testimony is elicited in response to a hypothetical question that accurately sets forth the plaintiff's physical and mental impairments." *Thomas v. Comm'r of Soc. Sec.*, 550 F. App'x 289, 290 (6th Cir. 2014) (quoting *Smith v. Halter*, 307 F.3d 377, 378 (6th Cir. 2001)). The ALJ is required to incorporate only those limitations that he or she found to be credible. *Spicer v. Comm'r of Soc. Sec.*, 651 F. App'x 491, 494 (6th Cir. 2016);

*Casey v. Sec'y of HHS*, 987 F.2d 1230, 1235 (6th Cir. 1993) (same). Here, the ALJ adequately

incorporated into the RFC the limitations from the VE's testimony that he found to be credible.

Plaintiff has not cited to any objective evidence or medical opinion supporting that he would be

absent two workdays per month, nor has he shown that the ALJ was required to accept the VE's

answer. Accordingly, plaintiff's fourth assignment of error should be overruled.

### 5. Plaintiff's "word about reopening."

Plaintiff states that he filed a prior DIB application in September 2012 that was denied on

October 31, 2012. (Doc. 8 at 9). Plaintiff states that because his present application was filed in

2015 and within four years of the 2012 application denial, the 2012 application should be

reopened for good cause, including new and material medical evidence. (*Id.*). Plaintiff argues

that new evidence shows a worsening of his back condition after October 31, 2012, which

required a initial back surgery in January 2013 and a second back surgery in May 2015. (*Id.*).

To the extent plaintiff seeks a remand of this matter for a determination as to whether

plaintiff's September 2012 application may be reopened, plaintiff has failed to present any legal

authority indicating the Court may order a remand under the circumstances of this case. As the

Court finds the decision of the ALJ is supported by substantial evidence, there is no basis for

considering whether plaintiff's September 2012 application for benefits should be reopened for a

possible award of benefits dating back to 2011. Accordingly, plaintiff's final assignment of error

should be overruled.

**IT IS THEREFORE RECOMMENDED** that the decision of the Commissioner be

**AFFIRMED** and this case be closed on the docket of the Court.


Date: _8/30/19_                           _Karen L. Litkovitz_
                                          Karen L. Litkovitz
                                          United States Magistrate Judge

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
### WESTERN DIVISION

JEFFREY WAYNE BROWN,
Plaintiff,

Case No. 1:18-cv-370

Dlott, J.

Litkovitz, M.J.

vs.

COMMISSIONER OF
SOCIAL SECURITY,
Defendant.

## NOTICE TO THE PARTIES REGARDING THE FILING OF OBJECTIONS TO R&R

Pursuant to Fed. R. Civ. P. 72(b), **WITHIN 14 DAYS** after being served with a copy of the recommended disposition, a party may serve and file specific written objections to the proposed findings and recommendations. This period may be extended further by the Court on timely motion for an extension. Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections. If the Report and Recommendation is based in whole or in part upon matters occurring on the record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon, or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs. A party may respond to another party's objections **WITHIN 14 DAYS** after being served with a copy thereof. Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See Thomas* v. *Arn*, 474 U.S. 140 (1985); *United States* v. *Walters*, 638 F.2d 947 (6th Cir. 1981).